UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN R. STENSRUD and MARIA B. STENSRUD,

                Plaintiffs,

v.

ROCHESTER GENESEE REGIONAL TRANSPORTATION AUTHORITY,

                Defendant.
_____

**DECISION AND ORDER**

6:19-CV-06753 EAW

## INTRODUCTION

Plaintiffs John R. Stensrud and Maria B. Stensrud (collectively "Plaintiffs") seek monetary damages pursuant to 42 U.S.C. § 1983 and New York State law based on defendant Rochester Genesee Regional Transportation Authority's ("RGRTA" or "Defendant") taking by eminent domain of property located at 36-38 Chamberlain Street in Rochester, New York (the "Property"). (Dkt. 58). Prior to the commencement of the instant action, Plaintiffs pursued a claim for additional compensation related to this taking in New York State Supreme Court, Monroe County (the "state trial court").

A bench trial was held in the state trial court on June 6, 2022, and on September 26, 2022, the state trial court issued a decision and order awarding Plaintiffs $509,000 as just compensation for the taking of the Property. (Dkt. 98-6). Defendant now moves for summary judgment on the basis of res judicata. (Dkt. 98). For the reasons that follow, Defendant's motion is granted.

## BACKGROUND

The following facts are taken from Defendant's statement of material facts not in dispute (Dkt. 98-1), Plaintiffs' response thereto (Dkt. 99-4), and the exhibits submitted by the parties. The Court has noted any relevant factual disputes.

RGRTA is a New York public authority vested with the power of eminent domain by § 1299-ii of the New York State Public Authorities Law. (Dkt. 98-1 at ¶ 1; Dkt 99-4 at ¶ 1). In 2013, RGRTA received final environmental approval and permission to proceed with its Main Street Campus Improvement Project (the "Project"). (Dkt. 98-1 at ¶¶ 2-3; Dkt. 99-4 at ¶¶ 2-3). RGRTA thereafter advised affected property owners about the Project and anticipated property acquisitions. (Dkt. 98-1 at ¶ 4; Dkt. 99-4 at ¶ 4).

Plaintiffs owned the Property in 2013, having purchased it in 2011. (Dkt. 98-1 at ¶¶ 8-9; Dkt. 99-4 at ¶¶ 8-9). The Property was one of the properties identified by RGRTA to be acquired as part of the Project. (Dkt. 98-1 at ¶ 8; Dkt. 99-4 at ¶ 8). Notices regarding RGRTA's intended acquisition of the Property were sent to Plaintiffs in April and May of 2013. (Dkt. 98-1 at ¶¶ 16-17; Dkt. 99-4 at ¶¶ 16-17).

On April 30, 2014, RGRTA received a "review appraisal" of the Property. (Dkt. 98-1 at ¶ 21; Dkt. 99-4 at ¶ 21). It then modified its plans and decided not to acquire the Property, communicating that decision to Mr. Stensrud by letter dated June 2, 2014. (Dkt. 98-1 at ¶¶ 22-23; Dkt. 99-4 at ¶¶ 22-23). However, in 2015, RGRTA reconsidered its decision not to acquire the Property, and determined that it would move forward with the acquisition. (Dkt. 98-1 at ¶ 24; Dkt. 99-4 at ¶ 24). On May 14, 2015, RGRTA met with Mr. Stensrud and informed him that RGRTA had elected to move forward with the

acquisition of the Property by eminent domain.  (Dkt. 98-1 at ¶ 25; Dkt. 99-4 at ¶ 25).  At that time, RGRTA offered Mr. Stensrud $255,000 as compensation for the Property.  (Dkt. 98-1 at ¶ 25; Dkt. 99-4 at ¶ 25).

On June 23, 2025, RGRTA commenced proceedings in the state trial court to acquire the Property.  (Dkt. 98-1 at ¶ 26; Dkt. 99-4 at ¶ 26).  The state trial court granted RGRTA permission to file its acquisition map for the Property by order entered on August 10, 2015, and RGRTA filed said acquisition map on August 13, 2015, thereby becoming the owner of the Property.  (Dkt. 98-1 at ¶¶ 27-28; Dkt. 99-4 at ¶¶ 27-28).  On or around November 10, 2015, RGRTA paid Plaintiffs compensation in the amount of $292,000, which was the value of the highest appraisal RGRTA had received for the Property at that time.  (Dkt. 98-1 at ¶ 30; Dkt. 99-4 at ¶ 30).  Plaintiffs take the position that the appraisal RGRTA relied upon was "severely infirm and inadequate, and that RGRTA knew or should have known that."  (Dkt. 99-4 at ¶ 30).  Plaintiffs filed a claim for additional compensation in the state trial court on December 30, 2015.  (Dkt. 98-1 at ¶ 31; Dkt. 99-4 at ¶ 31).

Plaintiffs commenced the instant litigation on October 9, 2019.  (Dkt. 1).  The operative pleading is the amended complaint filed on September 29, 2021.  (Dkt. 58).  In connection with this action, RGRTA retained licensed New York State real estate appraiser Ken Gardener to act as an expert witness.  (Dkt. 98-1 at ¶ 33; Dkt. 99-4 at ¶ 33).  Mr. Gardener appraised the value of the Property as it existed in 2015 as $418,000, and on April 14, 2022, RGRTA paid Plaintiffs an additional $174,800.  (Dkt. 98-1 at ¶¶ 33-34; Dkt. 99-4 at ¶¶ 33-34).

A bench trial was held in the state trial court beginning on June 6, 2022. (Dkt. 98-1 at ¶ 39; Dkt. 99-4 at ¶ 39). On September 26, 2022, the state trial court issued a decision and order awarding Plaintiffs $509,000 as just compensation for the taking of the Property, plus all accrued interest at 9% per annum. (Dkt. 98-1 at ¶ 44; Dkt. 99-4 at ¶ 44). A second amended judgment was filed in the state trial court on December 13, 2022, and RGRTA has satisfied the second amended judgment in its entirety. (Dkt. 98-1 at ¶¶ 45-46; Dkt. 99-4 at ¶¶ 45-46). Plaintiffs and RGRTA have appealed from the second amended judgment. (Dkt. 98-3 at ¶ 16).

RGRTA filed the instant motion for summary judgment on February 7, 2023. (Dkt. 98).[1] Plaintiffs filed their opposition on March 3, 2023 (Dkt. 99), and RGRTA filed its reply on March 16, 2023 (Dkt. 100). The Court heard oral argument on April 10, 2023, at which time it reserved decision. (Dkt. 102).

## DISCUSSION

The sole issue before the Court at this time is whether Plaintiffs' claims in this action are barred, in whole or in part, as a result of the state trial court's decision and judgment. Federal courts are required "to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 (1982) (citing 28 U.S.C. § 1738); *see also Malcolm v. Honeoye Falls-Lima Cent. Sch. Dist.*, 629 F. App'x

---

[1]   On January 10, 2023, the Court denied without prejudice a prior motion for summary judgment filed by RGRTA, as well as the parties' competing motions to preclude expert testimony, in order to first resolve the matter of the preclusive effect, if any, of the state trial court's decision on the instant matter. (*See* Dkt. 97).

87, 88 (2d Cir. 2015) ("It is axiomatic that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." (quotation omitted)). This rule applies with full force in § 1983 actions asserting violations of constitutional rights. *See Allen v. McCurry*, 449 U.S. 90, 105 (1980); *see also Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) ("In a federal § 1983 suit, the same preclusive effect is given to a previous state court proceeding as would be given to that proceeding in the courts of the State in which the judgment was rendered.").

"The term *res judicata*, which means essentially that the matter in controversy has already been adjudicated, encompasses two significantly different doctrines: claim preclusion and issue preclusion," *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015). New York recognizes both claim preclusion and issue preclusion (also known as collateral estoppel). *Leather*, 180 F.3d at 424. "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Simmons v. Trans Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) (quotation and alteration omitted). "Under New York law, collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party whether or not the tribunals or causes of action are the same. New York courts apply collateral estoppel, or issue preclusion, if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate

the issue in the earlier action." *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (quotations, alteration, and citations omitted).

"In New York, res judicata, or claim preclusion, bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was[.]" *People ex rel. Spitzer v. Applied Card Systems, Inc.*, 11 N.Y.3d 105, 122 (2005) (citations and quotation omitted). "New York employs a transactional approach to claim preclusion, under which the claim preclusion rule extends beyond attempts to relitigate identical claims to all other claims arising out of the same transaction or series of transactions." *Simmons*, 16 F.4th at 361 (quotation and alterations omitted). In applying the transactional approach, "New York courts analyze whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id*. (quotation omitted). The pendency of an appeal does not deprive a judgment of preclusive effect under New York law. *Papapietro v. Clott*, No. 22-CV-1318 RPK VMS, 2023 WL 2731687, at *5 (E.D.N.Y. Mar. 31, 2023); *see also DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003).

In this case, Plaintiffs' claim decided by the state trial court was for direct and consequential damages arising out of "RGRTA's permanent acquisition on or about August 13, 2015 by eminent domain of 36-38 Chamberlain Street, Rochester, New York[.]" (Dkt. 98-6). The claims asserted before this Court are: (1) direct damages flowing from RGRTA

having taken "plaintiffs' property without paying just compensation" and having "then actively and persistently continued to resist paying just compensation"; (2) "substantial and continuing additional damages" flowing from those same "actions and failures"; and (3) "additional damages" flowing from these same "actions and failures" pursuant to "[t]he New York Constitution and state law[.]" (Dkt. 58 at ¶¶ 51-62).

There is no dispute that the claims asserted in the instant action arise out of the same transaction or series of transactions as the claim resolved by the state trial court's decision and judgment—namely, the taking of the Property by RGRTA in August of 2015. Nor is there any dispute that the claims could have heard by the state trial court. Indeed, Plaintiffs' counsel conceded as much at oral argument. Further, Plaintiffs and RGRTA were parties to the state trial court proceeding. As such, Plaintiffs' claims in this action appear to be barred by claim preclusion under New York law. The question thus becomes whether there is an applicable exception to the doctrine of claim preclusion.

Plaintiffs raise several arguments as to why their claims are not precluded under New York law, each of which the Court has considered and finds unpersuasive. Plaintiffs contend that their "claims could not be fully heard in state court due to the interpretation of a state regulation." (Dkt. 99-2 at 10). In particular, citing cases dealing with New York's law on issue preclusion, Plaintiffs argue that the state trial court did not consider the issue of "true Income Capitalization" and that they "clearly did not have a full and fair opportunity to litigate that issue in state court." (*Id*.).

Plaintiffs' arguments incorrectly blend the law regarding claim preclusion with the law regarding issue preclusion. "New York's transaction-based claim preclusion doctrine

does not require a complete identity of issues." *BNF NY Realty, LLC v. Nissan Motor Acceptance Corp.*, No. 18 CIV. 3664 (LGS), 2019 WL 140648, at *6 (S.D.N.Y. Jan. 9, 2019); *see also O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981) ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."). Accordingly, it is no barrier to application of the doctrine of claim preclusion that the state trial court purportedly did not consider particular valuation theories in reaching its determination of what constituted just compensation for the taking of the Property.

At oral argument, Plaintiffs' counsel cited two additional cases in support of the argument that res judicata does not apply here: *Frein v. Pennsylvania State Police*, 47 F.4th 247 (3d Cir. 2022); and *Donnelly v. Maryland*, 602 F. Supp. 3d 836 (D. Md. 2022). Neither of these out-of-Circuit cases supports the result urged by Plaintiffs. In *Frein* (which did not involve eminent domain, but instead the confiscation of guns in connection with a criminal prosecution), the Third Circuit applied the res judicata law of Pennsylvania, and concluded that: (1) issue preclusion did not apply because the state court had not decided an "identical" issue; and (2) claim preclusion did not apply because the underlying state court proceeding was not a "vehicle for seeking just compensation for a taking," but allowed only the return of the property. 47 F.4th at 251 (citations omitted). New York's claim preclusion doctrine simply does not require that the issues be identical, as explained above, and the state court proceedings in this matter expressly dealt with the issue of just compensation. *Frein* thus is not on point.

As to *Donnelly*, the court in that case applied the res judicata law of Maryland, under which "three elements must be satisfied: (1) there was a final judgment on the merits in the earlier suit; (2) the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) the parties in the present litigation are the same or in privity with the parties in the earlier dispute." 602 F. Supp. 3d at 851 (citing *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008) ("Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered. Under Maryland law, the elements of res judicata are: (1) that the parties in the present litigation are the same or in privity with the parties in the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) that there has been a final judgment on the merits.")). Again, this is not the law in New York. New York does not require that the claim presented in a subsequent action be identical to that decided in the prior adjudication—instead, "New York courts adhere to a broad transactional analysis barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Niles v. Wilshire Inv. Grp.*, LLC, 859 F. Supp. 2d 308, 338 (E.D.N.Y. 2012) (quotation omitted).

Further, Plaintiffs' argument regarding the purported lack of a full and fair opportunity to litigate makes it clear that the state trial court indeed did have occasion to consider the issue of "true income capitalization" in determining what constituted just compensation for the taking of the Property, but decided the matter in a way that Plaintiffs view as erroneous. More specifically, Plaintiffs contend that their claim could not be "fully

heard in state court due to the interpretation of a state regulation"—namely, the state trial court's determination that 22 N.Y.C.R.R. § 202.61(e) barred the introduction of certain expert evidence regarding "true income capitalization," which ruling was affirmed by the New York State Supreme Court, Appellate Division, Fourth Department (the "Appellate Division"). (Dkt. 99-2 at 6-8, 10). As Plaintiffs themselves explain it, they "respectfully disagree with the Appellate Division's interpretation of section 202.61, which precluded [their expert witness] from testifying affirmatively in support of his analytical, expert Income Capitalization." (Dkt. 99-2 at 9).

Plaintiffs' arguments misapprehend what it means to have a full and fair opportunity to litigate an issue in state court. The state trial court and the Appellate Division fully heard Plaintiffs' arguments regarding their proffered expert testimony. Indeed, the Appellate Division agreed with Plaintiffs that "[w]here . . . the highest and best use [of a property at the time of a taking] is the one the property presently serves and that use is income-producing, then the capitalization of income is a proper method of valuation." *Rochester Genesee Reg'l Transportation Auth. v. Stensrud*, 173 A.D.3d 1699, 1701 (4th Dep't 2019). However, the Appellate Division determined that Plaintiffs' proffered expert testimony was not consistent with the valuation set forth in their appraisal report, and explained that 22 N.Y.C.R.R. § 202.61 limits the "affirmative proof of value" at trial "to matters set forth in [the parties'] respective appraisal reports." *Id*. (citations omitted). Accordingly, it affirmed in relevant part the state trial court's preclusion order. The New York Court of Appeals denied leave to appeal the Appellate Division's decision "upon the ground that the

order sought to be appealed from does not finally determine the proceeding[.]" *Rochester Genesee Reg'l Transportation Auth. v. Stensrud*, 35 N.Y.3d 950 (2020).

The state trial court's adverse evidentiary ruling, as affirmed by the Appellate Division—even if erroneous—does not establish that Plaintiffs were deprived of a full and fair opportunity to litigate the matter of just compensation. "The doctrine of res judicata does not depend on whether the prior judgment was free from error. Otherwise, judgments would have no finality and the core rationale of the rule of res judicata repose would cease to exist." *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 272 (2d Cir. 1977) (citations omitted); *see also Tarka v. Armstrong*, No. 01 CIV. 5605 (LAK), 2002 WL 31741259, at *3 (S.D.N.Y. Dec. 6, 2002) ("An assertion of legal error underlying a prior judgment . . . is insufficient to justify a conclusion that plaintiff lacked a full and fair opportunity to litigate."). In other words, what Plaintiffs seek—a second bite at the apple based on their disagreement with the state trial court's determinations—is precisely what the doctrine of res judicata is designed to avoid. The remedy for an erroneous legal ruling is the appellate process. *See Mitchell*, 553 F.3d at 272-73 ("Indeed, if appellant's claims of error were to decide this case, there would no longer be a distinction between direct review of an erroneous judgment and collateral attack. Here, the former was available and used by the appellant. As to the latter, however, unlike the federal habeas corpus statutes, the federal civil rights acts do not provide for collateral review of state court judgments. Federal courts do not sit to review the determinations of state courts."). In other words, now that there has been a final determination of the state court proceeding, Plaintiffs may seek review of the state trial court's evidentiary rulings from the Appellate Division and the New York

Court of Appeals—and even potentially petition the United States Supreme Court for a writ of certiorari.

Plaintiffs' reliance on *Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) (*see* Dkt. 99-2 at 9-10), is misplaced. In *Burgos*, the defendants sought to invoke the doctrine of res judicata based on a prior state court habeas corpus proceeding. 14 F.3d at 790. The Second Circuit found the doctrine inapplicable because "it is clear that a petitioner in a New York State habeas proceeding is not entitled to damages," and accordingly the state court hearing the habeas petition did not have the power to grant the petitioner the relief sought in his subsequent § 1983 action. *Id*. at 791-92. By contrast, the state trial court in this case was fully empowered to grant Plaintiffs just compensation, in the form of monetary damages, for the taking of the Property. This included a claim for consequential damages beyond the mere value of the property, which is also what is sought in this action in Plaintiffs' second cause of action. (*Compare* Dkt. 98-6 at 5-6 (seeking consequential damages related to "Cloud of Condemnation," as well as interest and financing costs) *with* Dkt. 58 at ¶ 57 (same)). And while Plaintiffs' counsel suggested at oral argument that there were additional damages being sought in this action based on the alleged continuing violation of Plaintiffs' constitutional rights, Plaintiffs do not contest that they could have sought such damages before the state trial court.[2]

---

[2] The only specific category of consequential damages identified in the amended complaint and not in Plaintiffs' state court claim is "Legal, Expert and Other Professional Costs." (Dkt. 58 at ¶ 57). New York law expressly provides that "where deemed necessary by the court for the condemnee to achieve just and adequate compensation, the court, upon application, notice and an opportunity for hearing, may in its discretion, award to the condemnee an additional amount, separately computed and stated, for actual and necessary

Finally, the Court is unpersuaded by Plaintiffs' argument that the Supreme Court's decision in *Knick v. Township of Scott, Pennsylvania*, __ U.S. __, 139 S. Ct. 2162 (2019), requires a different result. In *Knick*, the Supreme Court overruled its prior holding in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), that "a property owner whose property has been taken by a local government has not suffered a violation of his Fifth Amendment rights—and thus cannot bring a federal takings claim in federal court—until a state court has denied his claim for just compensation under state law." *Knick*, 139 S. Ct. at 2167. Accordingly, "the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983 at that time." *Id*. at 2168.

*Knick* did not disturb the well-established rules regarding the preclusive effect of state court judgments in § 1983 actions. In *Morabito v. New York*, 803 F. App'x 463 (2d Cir. 2020), the Second Circuit rejected the appellant's argument that, due to *Knick*, "the federal court should not apply collateral estoppel to state court rulings on their claims." *Id*. at 468. The Second Circuit explained that "[t]he district court was required by federal law to apply collateral estoppel to issues decided in [the state court] proceedings." *Id*.

---

costs, disbursements and expenses, including reasonable attorney, appraiser and engineer fees actually incurred by such condemnee." N.Y. Em. Dom. Proc. Law § 701. Here, the state court expressly found that "sufficient facts exist to order a hearing pursuant to EDPL § 701 should [Plaintiffs] apply for such additional condemnation." (Dkt. 98-23 at 23). There is accordingly no question that Plaintiffs could pursue this additional category of damages in the state court proceedings.

Other federal circuit courts agree. *See, e.g., Tejas Motel, L.L.C. v. City of Mesquite by & through Bd. of Adjustment*, __ F.4th __, No. 22-10321, 2023 WL 2596717, at *9 (5th Cir. Mar. 22, 2023) ("One can sympathize with Tejas's procedural plight. It was forced into state court by *Williamson County*, and now cannot avoid the consequences of the adverse judgment it received. But nothing in *Knick* nullifies long-settled principles of res judicata. State courts are competent to adjudicate federal claims, and their judgments are entitled to full faith and credit in federal court."); *Ocean Palm Golf Club P'Ship v. City of Flagler Beach*, 861 F. App'x 368, 371 (11th Cir. 2021) ("[I]n *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005), the Court held that the decision of a state court on a claim for just compensation under state law generally has preclusive effect in a later federal action. And in *Knick,* the Court explained that *San Remo* revealed the flaws in the *Williamson County* exhaustion requirement. 139 S. Ct. at 2167. . . . The *Knick* Court did not overrule or otherwise modify its precedent in *San Remo*."). Plaintiffs have not cited, nor has the Court discovered in its own research, any case in which a court has determined that *Knick* overruled *San Remo* or otherwise disturbed the longstanding principles of res judicata discussed above.

"Federal courts . . . are not free to disregard 28 U.S.C. § 1738 simply to guarantee that all takings plaintiffs can have their day in federal court." *San Remo*, 545 U.S. at 338. Here, Plaintiffs were heard in state court, and the Court is obliged to give the same preclusive effect to the state trial court's judgment that it would be given in the courts of New York. Under New York law, all of Plaintiffs' claims in this action are barred by claim preclusion. Accordingly, Defendant is entitled to summary judgment in its favor.

## CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion for summary judgment. (Dkt. 98). The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: April 14, 2023
        Rochester, New York